UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
NEW HAVEN DIVISION

In re:

COUNTRY HOME BAKERS, INC. : Chapter 11

Debtor : Case No. 03- 30784 ASD

MOTION OF DEBTOR AND DEBTOR-IN-POSSESSION
FOR AUTHORITY TO PAY PRE-PETITION EMPLOYEE WAGES, SALARIES
AND RELATED ITEMS; TO PAY HEALTH INSURANCE BENEFITS AND
RELATED BENEFITS; TO REIMBURSE PRE-PETITION EMPLOYEE BUSINESS
EXPENSES AND TO MAKE PAYMENTS FOR WHICH PAYROLL
DEDUCTIONS WERE MADE

Country Home Bakers, Inc., debtor and debtor-in-possession (hereafter "Debtor" or "CHB") hereby moves this Court for an Order (i) authorizing the Debtor, in accordance with Debtor's stated policies, to pay pre-petition employee wages, salaries, commissions, sick pay, vacation pay (including "personal days") and holiday pay; to reimburse pre-petition employee business expenses (including travel and lodging expenses) to pay other employee related benefits; to pay health benefit claims, and/or premiums under Debtor's health plan; to make payments for which certain employee payroll deductions were made; to pay all costs incident to the foregoing

G:\LRH\c\country home.Emerg Wage Motion.doc

#4 1/2

payments (including payroll-related taxes and processing costs) and (ii) authorizing applicable banks and other financial institutions to receive, process, and pay any and all checks drawn on Debtor's payroll and related accounts. In support of this Motion, Debtor respectfully represents as follows:

1. On February 14, 2002, (the "Petition Date"), Debtor commenced its reorganization case by filing a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 101-1330 (the "Bankruptcy Code"). CHB is continuing in possession of its respective property and is operating and managing its business, as debtor-in-possession, pursuant to § 1107 and § 1108 of the Bankruptcy Code. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 157 and § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2. CHB was founded in 1959 by Chester E. Borck who revolutionized the baking industry by developing the frozen dough bake off concept. This concept allows supermarkets to bring the freshness of a stand-alone bakery to the everyday store or supermarket. CHB supplies supermarkets with bread, pies and cookies which arrive at the store frozen. The store then uses an on-premise oven in the bakery to bake off the items and prepare them for sale as

G:\LRH\c\country home.Emerg Wage Motion.doc

freshly baked goods under their own label. CHB grew and established a national distribution network to supermarkets and food service operators not only with high quality frozen bakery products but also by providing technical trading and establishing the "in store bakery".

3. CHB is headquartered in Shelton, Connecticut and has two full service manufacturing facilities in Atlanta, Georgia and Torrance, California. The company also has an idle manufacturing facility in Georgia and a wholly owned subsidiary which operates in Keynes, UK. CHB had approximately 450 employees just prior to filing its Chapter 11 petition.

4. In the late 80's and 90's CHB encountered competitive pressures as new bakers entered the in store bakery industry. Major US companies entered the frozen dough market causing an erosion of CHB's margins and market share. As a result CHB sold or closed antiquated facilities and sold off non-profitable operations.

5. In 2002, CHB had revenues of approximately $130,000,000 and its balance sheet reflects assets of approximately $60,000,000 with liabilities of approximately $50,000,000.

G:\LRH\c\country home.Emerg Wage Motion.doc

6.  As of the Petition Date, many of CHB's employees and commission sales brokers were owed or had accrued various sums for (i) wages, salaries, commissions, sick pay, vacation pay (including "Personal Days") and holiday pay, (ii) employee health benefits, (iii) other employee related benefits and (iv) reimbursement of employee business expenses (including travel and lodging) (collectively, "Pre-Petition Compensation"). In addition, as of the Petition Date, Debtor had made deductions from employee paychecks to make payments on behalf of the employees for such items as, taxes, 401K contributions, health insurance premiums, life insurance payments, dental and vision programs, alimony, garnishments and support payments, and other similar programs in which Debtor deducts a sum of money from an employee's paycheck and pays such sum to a third party (collectively, "Deductions"). Pre-Petition Compensation and Deductions were due and owing as of the Petition Date because, inter alia:

(a)  The Chapter 11 petition was filed in the midst of Debtor's regular and customary salary and hourly wage payroll periods, as well as in the midst of Debtor's regular reimbursement cycle for Employee business expenses;

G:\LRH\c\country home.Emerg Wage Motion.doc

(b)  Many payroll and expense reimbursement checks issued to employees prior to the Petition Date have not yet been presented for payment or have not yet cleared the banking systems and accordingly were not honored and paid as of the Petition Date;

(c)  Employees have not yet been paid certain of their salaries and wages for services previously rendered to Debtor or been reimbursed for business expenses previously advanced on behalf of Debtor;

(d)  Certain other forms of compensation, including commissions, sick pay, vacation pay and holiday pay, related to pre-petition services have not yet been paid to the employees because such benefits, while accrued either in whole or in part prior to the Petition Date, were not payable at such time but will become payable in the ordinary course of business in the immediate future; and

(e)  Certain employee health benefit payments, relating to pre-petition services and/or insurance, have not yet been paid for the benefit of the employee because such benefits, while accrued either in whole or in part prior to the Petition Date under the Debtor's health plan, were not payable at such time but will become payable in the ordinary course of business in the immediate future.

G:\LRH\c\country home.Emerg Wage Motion.doc

5.   The Debtor seeks emergency relief by this Motion because any delay in paying Pre-Petition Compensation and Deductions will destroy Debtor's relationship with the employees and irreparably harm their morale at the very time when the dedication, confidence and cooperation of the employees is most critical. In order to maintain continuity of its business and preserve the morale of the continuing labor force, it is essential that the Debtor be permitted to reimburse and/or pay its employees Pre-Petition Compensation and Deductions accrued prior to the filing. It cannot be over-emphasized that the employees are being asked to apply their time and energies to the reorganization effort with renewed and even greater vigor. Absent the emergency relief requested herein, the employees will suffer undue hardship and, in many instances, serious financial difficulties because these amounts are needed to enable the employees to meet their own personal obligations. Lastly, without the requested emergency relief, the stability of Debtor will be undermined by the potential threat that otherwise loyal employees will seek other employment alternatives.

6.   As a result of the commencement of the Debtor's chapter 11 case, and in the absence of an order of the Court providing otherwise, the Debtor will be prohibited from paying or otherwise satisfying its prepetition wages, salaries,

G:\LRH\c\country home.Emerg Wage Motion.doc

commissions, sick pay, holiday, vacation obligations, reimbursable expenses, employee benefits, employee deductions, union benefits miscellaneous benefits (collectively, the "Prepetition Employee Obligations"), and the checks, wire transfers and direct deposit transfers issued in respect of the Prepetition Employee Obligations will be dishonored.

7. Accordingly, pursuant to sections 363(b) and 105(a) of the Bankruptcy Code and the "necessity of payment" doctrine, the Debtor seeks entry of an order authorizing, but not directing, the Debtor to: (i) pay Prepetition Employee Obligations; and (ii) continue its practices, programs and policies in effect as of the Petition Date with respect to the Prepetition Employee Obligations, including allowing employees to use vacation time accrued, but unused, as of the Petition Date. The Debtor further requests that the Court authorize and direct Fleet Bank ("Fleet") and Automatic Data Processing ("ADP"), and any banks at which the Debtor maintains accounts from which the Debtor's payroll obligations are disbursed (the "Disbursement Banks") to honor and pay all prepetition and postpetition checks issued or to be issued and fund transfers requested or to be requested, by the Debtor in respect of the Prepetition Employee Obligations. The Debtor also seeks authority

G:\LRH\c\country home.Emerg Wage Motion.doc

to issue new postpetition checks or fund transfer requests with respect to prepetition obligations that may have been dishonored by the banks.

8.  Pursuant to section 507(a)(3) of the Bankruptcy Code, the Debtor's employees' claims for "wages, salaries, or commissions, including vacation, severance, and sick leave pay" earned within ninety days before the Petition Date are afforded unsecured priority status to the extent of $4,650 per employee. Furthermore, section 363(b)(1) of the Bankruptcy Code provides: "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).

9.  Section 105(a) of the Bankruptcy Code provides:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a).

10.  Because a significant portion of the Prepetition Employee Obligations likely constitute priority claims pursuant to section 507(a)(3) and (a)(4) of the

G:\LRH\c\country home.Emerg Wage Motion.doc

8

Bankruptcy Code, which must be paid in full pursuant to section 1129(a)(9) of the Bankruptcy Code in order to confirm a plan of reorganization, payment of such obligations at this time merely affects the timing of such payments. The Debtor believes that only a few of its employees are owed more than $4,650 in respect of the Prepetition Employee Obligations earned within ninety days prior to the Petition Date.

11.    The Debtor's employees are essential to ensure the value of the Debtor's business. Consequently, it is critical that the Debtor continue its ordinary course personnel policies, programs and procedures that were in effect prior to the Petition Date. If the checks issued and fund transfers requested in payment of the Prepetition Employee Obligations are dishonored, or if such accrued obligations are not timely paid postpetition, the Debtor's employees will suffer extreme personal hardship and may be unable to pay their daily living expenses. Likewise, it would be inequitable to require the Debtor's employees to bear personally the business expenses that were incurred on behalf of the Debtor with the expectation that they would be reimbursed.

G:\LRH\c\country home.Emerg Wage Motion.doc

12. Authorizing, but not directing, the Debtor to pay the Prepetition Employee Obligations in accordance with the Debtor's prepetition business practices is in the best interests of the Debtor, the Debtor's creditors and all parties in interest, and will enable the Debtor to continue to operate its business in an economic, efficient manner without disruption. A significant deterioration in morale among employees at this critical time undoubtedly would have a devastating impact on the Debtor, its customers, the value of its assets and business and its ability to reorganize. The total amount to be paid if the relief sought herein is granted is modest compared with the size of the Debtor's estate and the importance of the Debtor's employees to the restructuring effort. Further, many of these obligations are not immediate but, rather, will be satisfied over an extended period of time.

14. Finally, authorization of the payment of the Prepetition Employee Obligations herein shall not be deemed to constitute postpetition assumption or adoption of any policy, plan, program or employee agreement pursuant to section 365 of the Bankruptcy Code. The Debtor is in the process of reviewing these matters and reserves all of its rights under the Bankruptcy Code with respect thereto.

G:\LRH\c\country home.Emerg Wage Motion.doc

14. The Debtor has a payroll for all of its employees to meet on Friday, February 20, 2003 and each week thereafter. The Debtor estimates the gross amount of this payroll and related employee benefits, which will include compensation for services rendered pre-petition, to be approximately $325,000. The Debtor has funds sufficient to pay all Pre-Petition Compensation and Deductions as such amounts become due. In addition, the Debtor represents that payroll checks will be drawn on an identifiable payroll accounts. Accordingly, checks other than those for Pre-Petition Compensation and Deductions will not be honored inadvertently.

WHEREFORE, Debtor respectfully requests the Court to enter an emergency order (i) authorizing Debtor to pay Pre-Petition Compensation in accordance with Debtor's stated policies with regard thereto; (ii) authorizing Debtor to pay Deductions to those parties to which such sums are owed; (iii) authorizing Debtor to pay all costs incident to the payment of Pre-Petition Compensation and Deductions such as payroll-related taxes and processing costs; (iv) authorizing all applicable banks and other financial institutions to receive, process, honor and pay any and all checks drawn on Debtor's payroll and health insurance accounts, whether presented prior to or after the Petition Date in accordance with Debtor's stated policies with regard thereto, provided

G:\LRH\c\country home.Emerg Wage Motion.doc

sufficient funds exist in the Debtor's payroll accounts to cover such payment; and (v) granting Debtor such other and further relief as the Court deems just and proper.

Dated this 14 day of February, 2003 at Bridgeport, Connecticut.

                                            COUNTRY HOME BAKERS, INC.
                                            THE DEBTOR

                                            _____
                                            Craig I. Lifland (ct00976)
                                            James G. Verrillo (ct08819)
                                            Zeisler & Zeisler, P. C.
                                            558 Clinton Avenue
                                            P. O. Box 3186
                                            Bridgeport, CT  06605-0186
                                            (203) 368-4234

lrh/form/emergency.motion.wages

G:\LRH\c\country home.Emerg Wage Motion.doc

12